MARCUS LEE (Nevada Bar No. 15769)
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
Telephone: 702.893.3383
Facsimile: 702.893.3789
Marcus.Lee@lewisbrisbois.com

*Attorneys for Quest Diagnostics Incorporated*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| QUEST DIAGNOSTICS INCORPORATED, a New Jersey corporation;<br><br>Plaintiff,<br><br>vs.<br><br>ABDELRAHMAN ELARJA, an individual.<br><br>Defendant. | Case No.<br><br>**VERIFIED COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Quest Diagnostics Incorporated ("Quest"), through its attorneys Lewis, Brisbois, Bisgaard & Smith LLP, by way of its Verified Complaint against Defendant Abdelrahman Elarja ("Elarja"), hereby states:

**NATURE OF THE CASE**

1.   This is a case about a former Quest employee, Elarja, who violated his duty of loyalty and restrictive covenant obligations by unlawfully misappropriating and disclosing Quest's confidential information.  While employed at Quest, Elarja had access to Confidential Information, including Quest's policies and procedures and patient test results.  Elarja misappropriated Confidential Information, including but not limited to, Quest's incident and injury reporting policies and procedures, retention policies and procedures, training guides and patient testing information. Additionally, while Elarja was employed at Quest he was also surreptitiously working for a competitor, Express Medical Labs LLC ("Express Medical Labs"),



4891-5867-4692.1

without Quest's knowledge or consent. If Elarja is not enjoined, he will continue disclosing the Confidential Information that he misappropriated from Quest.

2. As a result of Elarja's unlawful conduct, Quest seeks a temporary restraining order, preliminary injunction, and permanent injunction: (i) prohibiting him from possessing, utilizing, or disclosing to third parties Quest's Confidential Information, (ii) providing an accounting for and identifying all Quest Confidential Information in his possession, (iii) providing an accounting for and identifying all Quest Confidential Information he transmitted to third parties, (iv) requiring him to return all Quest Confidential Information in his possession; and (v) allowing a third-party IT vendor to access his personal email accounts, electronic devices, and any cloud-based system to identify and delete all Quest Confidential Information. Quest also seeks money damages.

## THE PARTIES

3. Quest is a Delaware corporation with its principal place of business in Secaucus, New Jersey. Quest is a diagnostics laboratory which specializes in, among other things, providing clinical laboratory services, including toxicology services to patients, hospitals, doctors, and healthcare providers.

4. Elarja was employed by Quest as a Laboratory Supervisor from April 2018 to March 29, 2022. Upon information and belief, Elarja resides at 930 Monte de Oro Avenue, Las Vegas, Nevada 89183.

## JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because at least one of the claims at issue are governed by the laws of the United States, specifically the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et. seq.* and related statutes. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 since the amount in controversy exceeds $75,000 exclusive of interests and costs and there is complete diversity of citizenship among the parties. Quest invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Elarja because, among other things, he has engaged in employment and business activities in the State of Nevada and in this judicial district, and the acts complained of herein occurred in or were directed to the State of Nevada and this judicial district.

7. Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claims occurred in this district or otherwise because Elarja is subject to this Court's personal jurisdiction with respect to this action.

## RELEVANT FACTS

**A.  Elarja's Employment with Quest and His Restrictive Covenant Agreements.**

8. On or about April 23, 2018, Elarja was offered and thereafter accepted employment with Quest as a Laboratory Supervisor in the Las Vegas, Nevada region.

9. Elarja's job responsibilities at Quest included, but were not limited to, overseeing staff and activities of the department, performing advanced or specialized tests, confirming test results, checking and approving all specialized and problem reports for accuracy and initiating quality-control measures and monitoring quality of work for adherence to local laboratory standards.

10. Upon applying for employment with Quest, Elarja entered into an Application Agreement, in which, among other things, he agreed:

> I shall not use or disclose (directly or indirectly) any Confidential Information (whether or not developed by me) at any time or in any manner, except as required in the course of employment with the Company.

> All documents and things embodying Confidential Information, whether prepared by me or otherwise coming into my possession are the exclusive property of the Company and must not be removed from any of its premises except as required in the course of employment with the Company. I shall promptly return all such documents and things to the Company upon request of the Company, and on termination of my employment with the Company. I will not remove any Confidential Information such as documents or things or retain it in whole or part in any manner.



4891-5867-4692.1

3

In addition, I understand that I may never utilize or disclose medical information of patients for any purpose other than in the course of my employment with the Company.

11. The Application Agreement defines "Confidential Information" as:

"Confidential Information" includes information not generally known to the public, including but not limited to trade secrets, patient information, business plans, formulas, technical data, protocols, processes, computer software, customer names, pricing, test results, sales and marketing information and materials, financial information, client information and business methods, plans, policies and practices  If I am unsure whether or not information is confidential, I agree to speak with my manager before disclosing the information.

12. Upon accepting employment with Quest, Elarja signed a Confidentiality Agreement, in which, among other things, he agreed:

I shall not use or disclose (directly or indirectly) any Confidential Information (whether or not developed by me) at any time or in any manner, except as required in the course of employment with the Company.

All documents and things embodying Confidential Information, whether prepared by me or otherwise coming into my possession are the exclusive property of the Company and must not be removed from any of its premises except as required in the course of employment with the Company. I shall promptly return all such documents and things to the Company upon the request of the Company, and on any termination of my employment with the Company. I will not remove any Confidential Information such as documents or things or retain it in whole or part in any manner. I shall ensure that any export of Confidential Information undertaken by me or with my knowledge or approval shall be in compliance with all applicable laws. In addition, I understand that I may never utilize or disclose medical information of patients for any purpose other than in the course of my employment with the Company.

A true and correct copy of the Application Agreement is attached hereto as **Exhibit A.**  A true and correct copy of the Confidentiality Agreement is attached hereto as **Exhibit B.**

13. Quest provides clinical laboratory services to its clients and patients.  The clinical laboratory business is a highly competitive industry.

14. Quest has gone to great expense and effort to develop and maintain its customer relationships and to compile and safeguard its Confidential Information.

15. These expenditures and efforts include, but are not limited to: developing a business plan, maintaining and developing highly sensitive and proprietary account and customer information, developing a compensation structure, formulating budgets, determining labor and other related costs and determining profit margins, developing marketing materials, preparing training materials, developing highly detailed standard operating procedures ("SOPs") for all parts of lab operations, and developing an infrastructure necessary to service its customers.

16. The Confidential Information developed and compiled through Quest's efforts is protected from disclosure by Quest and is not available to the public, third parties, or Quest competitors.

17. During the course of his employment with Quest, in order to perform his job duties at Quest, Elarja acquired and otherwise obtained access to a wide range of Confidential Information, including, but not limited to, highly sensitive and proprietary account and customer information and Quest's SOPs. Elarja was given this access based upon his agreement to preserve the confidentiality of such Confidential Information. The Confidential Information is unique to Quest and is critical to its operations and business including competing in this highly competitive industry.

18. At all times, Quest took reasonable precautions to protect its Confidential Information from disclosure to the public and has invested substantial resources in the development and retention of its customers.

**B.  Elarja Misappropriates Quest's Confidential Information.**

19. On or about March 23, 2022, Quest's Data Protection and Governance Department captured an email sent by Elarja from his work server email to his personal email address that included several attachments containing Quest's Confidential Information, including SOPs and training guides. In doing so, Elarja unlawfully misappropriated Quest's Confidential Information because the email was not an approved distribution nor a standard process for Elarja's team.

20. On or about March 23, 2022, Elarja's supervisor, Remisola Ajayi, spoke with Elarja to determine why he sent Quest's Confidential Information from his work server email to his personal email. Elarja responded that he sent Quest's Confidential Information to his personal email account because he "liked to study."

21. Additionally, and as a result of Elarja's misappropriation, Quest's Data Protection and Governance Department conducted an investigation that revealed additional emails of concern and showed that Elarja downloaded a cloud storage program on his work computer.

22. On or about April 2, 2021 at 6:20 p.m., Elarja misappropriated Quest's Confidential Information by sending an email from his work server email to his personal email that attached a patient's test results. Additionally, on or about August 19, 2021 at 1:52 p.m., Elarja misappropriated Quest's Confidential Information by sending an email from his work server email to his personal email that attached the same patient's test results. Upon information and belief, these test results belonged to Elarja's wife.

23. On or about June 8, 2021 at 4:29 p.m., at a time when Elarja should have been working for Quest, Elarja sent an email from his work server email to his personal email with the subject line "lighthouse" that included talking points for a clinical laboratory – Express Medical Labs – unrelated to Quest. Of note, the email states: "Express medical labs strives for excellence in all facilities" and discusses testing and "feedback from experts." Additionally, on or about November 18, 2021 at 4:03 p.m., Elarja sent another email from his work server email to his personal email and surreptitiously included the subject line "isurance[sic]." However, the email does not include or discuss insurance information. In fact, the email attached a Clinical Laboratory Improvement Amendment ("CLIA") application for Express Medical Labs. Later that day, Elarja sent an email from his work server email to his personal email and surreptitiously included the subject line "RE: Medical insurance." The email does not include or discuss medical insurance information. In fact, the email attached the CLIA application for the Quest competitor Elarja was working for - Express Medical Labs. Again, the next day, on or

about November 19, 2021 at 3:15 p.m., Elarja sent an email from his work server email to his personal email and surreptitiously included the subject line "Insurance." As with the prior sham email subject line, the email does not include or discuss insurance information. Instead, again the email attached a CLIA application for Express Medical Labs.

24. On or about January 9, 2022, at 3:56 p.m., Elarja misappropriated Quest's Confidential Information by sending an email from his work server email to his personal email and surreptitiously included the subject line "TOP Time." The email does not include or discuss paid time off. In fact, the email attached an excel spreadsheet that included client information and accession numbers regarding leukemia/lymphoma evaluations performed at a Quest laboratory in Las Vegas, Nevada.

25. On or about February 11, 2022 at 3:12 p.m., Elarja misappropriated Quest's Confidential Information by sending an email from his work server email to his personal email and again included the subject line "Insurance." The email does not include or discuss insurance information. In fact, the email attached Quest's information regarding sample COVID test results.

26. On or about March 21, 2022 at 2:16 p.m., Elarja misappropriated Quest's Confidential Information by sending an email from his work server email to his personal email with the subject line "Insurance." The email does not include or discuss insurance information. In fact, the email attached an excel spreadsheet that included patient information regarding multiple test results performed at Quest laboratories in Dallas and Houston, Texas.

27. From January 9, 2022 to March 23, 2022, Elarja misappropriated a number of Quest's confidential and proprietary SOPs by sending emails from his work server email to his personal email with misleading and mislabeled subject lines in an attempt to avoid scrutiny. Specifically:

    a. On or about January 9, 2022 at 3:28 p.m., Elarja sent an email with the subject line "Insurance" that attached Quest's confidential and proprietary Incident and Injury Reporting Procedures;

b. Later that day at 3:32 p.m., Elarja sent another email with the subject line "Insurance" that again attached Quest's confidential and proprietary Incident and Injury Reporting Procedures.

c. On or about January 11, 2022 at 5:16 p.m., Elarja sent an email with the subject line "Pay check" that attached Quest's policies and procedures related to records and materials retention periods;

d. That same day, at 5:04 p.m., Elarja sent an email with the subject line "Dental Insurance" that attached Quest's proprietary policies and procedures related to histotechnician student training programs;

e. On or about January 13, 2022 at 2:19 p.m., Elarja sent an email with the subject line "My salary" that attached Quest's policies and procedures related to pipette device calibration checks;

f. On or about January 28, 2022 at 12:35 p.m., Elarja sent an email with the subject line "Insurance" that attached Quest's policies and procedures for centrifuge maintenance and function checks, calibration report forms and training verification forms;

g. On or about January 31, 2022 at 11:49 a.m., Elarja sent an email with subject line "PT Insurance" that attached Quest's policies and procedures for anatomic pathology laboratories;

h. On or about March 23, 2022 at 11:57 a.m., Elarja sent an email with subject line "Tax" that attached 15 Quest proprietary documents, including Quest's policies and procedures regarding anatomic pathology laboratories, training guides, forms, test ordering, personnel tracking and validation and verification checks.

28. Upon information and belief, Elarja surreptitiously included misleading information in the subject lines of the emails from his work server email to his personal email account while misappropriating Quest's Confidential Information to try to avoid triggering any red flags in Quest's Data Protection and Governance Department.

4891-5867-4692.1                            8

29. Specifically, the policies and procedures that Elarja misappropriated include several of Quest's SOPs. These SOPs are proprietary step-by-step instructions and best practices compiled by Quest over years of operations to help its employees carry out operations and their daily tasks. Additionally, these SOPs are essential to Quest's business and operations as they aim to achieve efficiency, quality output and uniformity of operations while reducing miscommunication and failure to comply with industry regulations.

30. Additionally, the documents that Elarja misappropriated from Quest include confidential information for hundreds of Quest clients which Elarja was prohibited from disclosing to anyone, especially a third-party.

31. Quest's policies and procedures, report forms and training verification forms contain information that is highly sensitive and proprietary to Quest. If obtained by a competitor or if publicly disclosed over the internet, these documents could be used to unfairly compete against Quest or damage Quest's competitive advantage in the industry.

32. Upon information and belief, Elarja has shared this Confidential Information with Express Medical Labs and will inevitably continue to do so. Doing so violates Elarja's Application Agreement and Confidentiality Agreement as well as Nevada and federal laws.

33. On March 23, 2022, as a result of Elarja's multiple instances of misappropriation of Quest's Confidential Information, Elarja's supervisor, Remisola Ajayi, met once again with Elarja to determine why he sent Quest's Confidential Information from his work server email to his personal email. In response, Elarja stated that he sent Quest's Confidential Information to his personal email account because he "wanted to study" and that he "liked to look" at Quest's SOPs on his iPad, even when he pointed out that he could view them on his laptop at home.

34. As a result of Elarja's multiple violations of the Account Application and Confidentiality Agreement, Quest terminated his employment on March 29, 2022.



**C. Elarja Discloses That He Was Working for Express Medical Labs at the Same Time He Was Working for Quest.**

35. On April 4, 2022, due to Elarja's multiple violations of the Account Application and Confidentiality Agreement, Quest's counsel sent Elarja a letter requesting that he immediately: (i) provide an accounting for and identify all Quest Confidential Information in his possession; (ii) provide an accounting for and identify all Quest Confidential Information he transmitted to third parties; (iii) return all Quest Confidential Information in his possession; and (iv) allow a third-party IT vendor access to his personal email accounts, devices, and any cloud–based system to identify and delete all Quest Confidential Information.

36. On April 5, 2022, Elarja contacted Quest's counsel via telephone confirming that he had received the letter. Elarja also admitted during that conversation that while he was employed at Quest, Elarja was working at Express Medical Labs and had been since April 2021. During that conversation, Elarja agreed to respond to the inquiries in Quest's April 4 letter in writing and notarize his response by April 6, 2022.

37. Elarja, as an employee of Quest, owed Quest a duty of loyalty, was required to act with good faith and fairness, and was required to place Quest's interests ahead of his own personal conflicting interests.

38. The duty of loyalty prohibited Elarja from concurrently working at a Quest competitor – Express Medical Labs – and additionally purloining Quest Confidential Information during his employment to disclose to Express Medical Labs.

**D. Elarja Agrees to Allow an IT Vendor Access His Personal Email Accounts and Electronic Devices but Backs Out at the Last Minute**

39. On April 7, 2022, Quest's counsel followed up with Elarja via email as they did not receive Elarja's notarized response.

40. On April 7, 2022, Elarja sent an email to Quest's counsel alleging that he deleted the emails he sent to his personal email from his work server email and that he did not transmit any of Quest's Confidential Information to any third-parties. In that email, Elarja also agreed to have an IT vendor access his personal email accounts and electronic devices to identify and

delete Quest's Confidential Information. Elarja also stated that he would send his notarized response to the April 4 letter the next day.

41. On April 8, 2022, after some delay, Quest received Elarja's notarized response that stated "I swear that I don't have Quest confident[sic] information and I have nothing to return. I did not transmit any Quest confident[sic] information to third parties."

42. On April 13, 2022, Quest's counsel met with Elarja in order to have an IT vendor access his personal email accounts and electronic devices (which he had previously agreed to). However, Elarja refused to proceed with the device imaging. Elarja instead offered to factory-reset his cellular phone, which Quest's counsel instructed him not to do. Nevertheless, Elarja disregarded these instructions and reset his phone, contrary to Quest counsel's instructions.

43. As set forth above, the harm to Quest caused by Elarja's breaches of the Application Agreement and his Confidentiality Agreement and his inevitable disclosure of additional Confidential Information is irreparable and cannot be quantified in just monetary terms.

## FIRST COUNT

### (Injunctive and Equitable Relief)

44. Quest repeats and re-alleges all of the prior allegations of the Verified Complaint as if fully set forth at length herein.

45. As set forth above, Elarja has misappropriated and unlawfully possessed Quest's Confidential Information and disclosed Quest's Confidential Information, in violation of the Application Agreement and his Confidentiality Agreement, and state and federal law.

46. Injunctive relief in the form of a temporary, preliminary, and permanent injunction is necessary to maintain the status quo and prevent irreparable harm to Quest, in the form set forth in the Prayer for Relief below and the proposed order submitted herewith. Injunctive relief is appropriate because remediation is a form of equitable relief requiring continued supervision necessitating more than mere monetary relief.

47. No adequate remedy at law exists.

## SECOND COUNT

### (Breach of Contract)

48. Quest repeats and re-alleges all of the prior allegations of the Verified Complaint as if fully set forth at length herein.

49. The Application Agreement and the Confidentiality Agreement that Elarja entered with Quest constitute binding, enforceable, and valid contracts with Quest, with the exchange of valuable consideration.

50. Quest has fully and faithfully performed all of its duties and obligations under the Application Agreement and the Confidentiality Agreement.

51. The employment and post-employment obligations contained in the Application Agreement and the Confidentiality Agreement are reasonable and necessary to protect Quest's legitimate business interests.

52. Elarja has breached the Application Agreement and the Confidentiality Agreement by (a) misappropriating, possessing, and disclosing to third parties Quest's Confidential Information, and (b) failing to return Quest's Confidential Information upon request.

53. As a direct result of Elarja's breach of the Application Agreement and Confidentiality Agreement, Quest has suffered, and will continue to suffer, irreparable harm including, but not limited to: (a) its ability to retain its competitive advantage in the industry and with its customers, and (b) Elarja's inevitable disclosure of additional Confidential Information of Quest.

54. In addition to the irreparable harm suffered by Quest as a result of the breaches by Elarja, Quest has suffered monetary damages in an amount as yet to be determined.

## THIRD COUNT

### (Breach of the Implied Covenant of Good Faith and Fair Dealing )

55. Quest repeats and re-alleges all of the prior allegations of the Verified Complaint as if fully set forth at length herein.

56. As set forth above, Elarja entered into the Application Agreement and his Confidentiality Agreement, which provide for certain obligations and restrictions upon Elarja during his employment and following termination of employment including, but not limited to, disclosure of Quest's Confidential Information, and the return of Quest's Confidential Information.

57. The Application Agreement and the Confidentiality Agreement are valid contracts, with the exchange of sufficient consideration.

58. The Application Agreement and the Confidentiality Agreement set forth additional material obligations with which Elarja has failed to comply and, in fact, has willfully and knowingly violated.

59. Implied in every contract is the covenant of good faith and fair dealing.

60. As set forth above, Elarja has repeatedly breached his covenants.

61. As result of this breach, Quest has suffered damages in an amount as yet to be determined.

## FOURTH COUNT

**(Breach of the Duty of Loyalty)**

62. Quest repeats and re-alleges all of the prior allegations of the Verified Complaint as if fully set forth at length herein.

63. Elarja, as an employee owing a duty of loyalty to Quest, was required to act with good faith and fairness in transactions, with a responsibility to place the corporation's interests ahead of his own personal conflicting interests.

64. The duty of loyalty prohibited Elarja from working at a competitor while he was employed at Quest and from purloining Quest Confidential Information during his employment to disclose to a competitor.

65. As a result of Elarja's breach of the duty of loyalty, Quest was damaged.



4891-5867-4692.1

13

## FIFTH COUNT

**(Misappropriation of Trade Secrets under Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et. seq.*)**

66. Quest repeats and re-alleges all of the prior allegations of the Verified Complaint as if fully set forth at length herein.

67. Quest's confidential, proprietary, and trade secret information and materials derive from substantial, independent economic value from not being generally known to the public or to its competitors, who could obtain economic value from the information. Quest has expended substantial financial and human resources to develop this information, which cannot be easily acquired or replicated by others.

68. Quest has taken reasonable steps under the circumstances to safeguard the confidentiality and secrecy of its confidential, proprietary, and trade secret information and materials.

69. Among other things, Quest has required its employees to sign agreements and conform to policies that include confidentiality provisions, including execution of the Application Agreement. Quest has taken security measures and other measures to protect its confidential, proprietary, and trade secret information and materials.

70. Elarja agreed to and acknowledged contracts and policies that include confidentiality, non-disclosure, and non-use provisions.

71. Quest's confidential, proprietary, and trade secret information and materials are valuable and important to the operation of its business.

72. Quest's confidential, proprietary, and trade secret information and materials are not known to competitors, and not readily ascertainable through proper means by competitors. Competitors could profit from the use or disclosure thereof.

73. Quest is informed and believes that Elarja has accessed and transmitted Quest's confidential, proprietary, and trade secret information and materials without Quest's consent in



breach of Elarja's duties to Quest to maintain their secrecy and confidentiality and not to utilize them for his own benefit.

74. Elarja's conduct constitutes misappropriation and misuse of Quest's confidential, proprietary, and trade secret information and materials.

75. If Elarja is permitted to continue to transmit Quest's confidential, proprietary, and trade secret information and materials, this will result in irreparable harm to Quest.

76. Upon information and belief, Elarja's actions and conduct were oppressive, fraudulent, willful, and malicious, and in conscious disregard of Quest's rights.

77. By reason of Elarja's violations of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et. seq.* and related statutes, Quest faces immediate, substantial, and irreparable harm for which there is no adequate remedy at law.

78. As a direct and proximate result of Elarja's violations of the Defend Trade Secrets Act, Quest has sustained and will continue to sustain irreparable injury. Accordingly, Quest is entitled to a temporary restraining order and a preliminary injunction, compensatory and exemplary damages, and attorneys' fees.

## SIXTH COUNT

**(Nevada Uniform Trade Secrets Act, NRS §§ 600A, *et seq*)**

79. Quest repeats and re-alleges all of the prior allegations of the Verified Complaint as if fully set forth at length herein.

80. Quest's Confidential Information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other people who can obtain economic value from it.

81. Quest has taken substantial efforts, reasonable under the circumstances, to maintain the secrecy of such information.

82. Specifically, Elarja misappropriated Quest's policies and procedures, including its SOPs, report forms and training verification forms.



4891-5867-4692.1                                                   15

83. As such, this information constitutes a "trade secret," as defined by the Nevada Uniform Trade Secrets Act ("NTSA"), NRS 600A.030(5)(a)(1).

84. As set forth above, Elarja has unlawfully misappropriated and possessed Quest's Confidential Information and disclosed Confidential Information in violation of the Application Agreement and his Confidentiality Agreement.

85. As set forth above, Elarja has, by improper means, acquired, used, and disclosed Quest's Confidential Information, and has disclosed and/or used Quest's trade secrets without the express or implied consent of Quest.

86. As set forth above, Elarja has misappropriated Quest's trade secrets by improper means including, but not limited to, breach of an express duty to maintain the secrecy of, or to limit the use or disclosure of, a trade secret. Elarja has also exceeded the scope of his authorized use of Quest's trade secrets.

87. Elarja's conduct, as aforesaid, was and is in furtherance of a scheme to obtain and convert to his personal use and for his personal gain Quest's Confidential Information and trade secrets.

88. As a result of this misappropriation, Quest has suffered damages.

**JURY TRIAL DEMAND**

89. Quest demands a trial by jury on any issue so triable.

///

///

///

///

///



4891-5867-4692.1

# RELIEF REQUESTED

**WHEREFORE**, Quest demands judgment (including temporary, preliminary, and permanent injunctive relief) against Elarja, as follows:

(a) Temporarily, preliminarily, and permanently enforcing the terms of Elarja's Application Agreement and Confidentiality Agreement: including but not limited to those provisions;

(b) Compelling Elarja to, within fourteen (14) days of the date of entry of this order, provide an accounting under oath of all Quest Confidential Information Elarja took from Quest;

(c) Compelling Elarja to, within fourteen (14) days of the date of entry of this order, provide an accounting under oath of all Quest Confidential Information Elarja disclosed to third parties, the identities of those third parties, and identify which Confidential Information was provided to each and every third party;

(d) Compelling Elarja to, within seven (7) days of the date of entry of this order, return to Quest's counsel all Quest Confidential Information, including all copies thereof, as well as all originals and all copies of works, whether prepared by Elarja or others, in his possession or in the possession of others, and to certify under oath that all such Quest Confidential Information has been returned;

(e) Compelling Elarja to, within seven (7) days of the date of entry of this order, allow a third-party IT vendor access his personal email accounts, his electronic devices, and his cloud-based electronic data storage systems to identify and delete all Quest Confidential Information;

(f) Compelling Elarja to immediately preserve any Quest Confidential Information in his possession;

(g) Compelling Elarja to immediately refrain from disclosing or utilizing any Quest Confidential Information for any purpose;

(h) Awarding compensatory, incidental, actual, presumed, special, and consequential

damages;

(i) Awarding pre- and post-judgment interest;

(j) Awarding punitive damages to the extent permitted by law;

(k) Awarding attorneys' fees to the extent permitted by law;

(l) Awarding costs of suit; and

(m) Awarding such other and further relief as the Court deems just and proper or is otherwise allowed and is proper pursuant to applicable law.

Dated this 18th day of April, 2022.

LEWIS BRISBOIS BISGAARD & SMITH LLP

By  /s/ Marcus Lee
MARCUS J. LEE
Nevada Bar No. 15769
6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
Tel. 702.893.3383

Attorneys for Quest Diagnostics Incorporated

## VERIFICATION

Dmitry Rozenberg, of full age, certifies as follows:

1. I am employed as Principal Engineer, Strategic Threat and Intelligence Center for Plaintiff Quest Diagnostics Incorporated ("Quest").

2. I have read this Verified Complaint.

3. The matters stated therein are true and correct to my personal knowledge except as to matters therein stated to be upon information and belief and, as to those matters, I believe them to be true.

I certify that the foregoing statements made by me are true. I am aware that if any of these statements are willfully false, I am subject to punishment.

_____
Dmitry Rozenberg

Dated: 04/19/2022