**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| QUEST DIAGNOSTICS INCORPORATED, )<br>             )<br>         Plaintiff, )<br>vs. )<br>             )<br>ABDELRAHMAN ELARJA, )<br>             )<br>         Defendant. )<br>             ) | Case No.: 2:22-cv-00647-GMN-EJY<br><br>**ORDER** |

Pending before the Court is the Amended Motion for Preliminary Injunction, (ECF No. 12), filed by Plaintiff Quest Diagnostics, Incorporated ("Plaintiff" or "Quest"). Defendant Abdelrahman Elarja filed a Response, (ECF No. 19), to which Plaintiff filed a Reply, (ECF No. 21).

For the reasons set forth below, Plaintiff's Motion for Temporary Restraining Order is **GRANTED**.

**I.     BACKGROUND**

This action arises from Abdelrahman Elarja's ("Defendant's") alleged misappropriation of trade secrets and breach of contract while employed at Quest Diagnostics, Inc. (*See* Verified Compl., ECF No. 1). Plaintiff alleges the following information.

**A.     EMPLOYMENT WITH QUEST**

Defendant began working with Quest on April 23, 2018, as a Laboratory Supervisor. (*Id.* ¶ 8). Defendant's responsibilities included performing advanced or specialized tests, confirming test results, checking and approving all specialized and problem reports for accuracy, and initiating quality control measures when needed. (*Id.* ¶ 9). Defendant, as part of his employment, entered into an Application Agreement, in which he agreed to "not use or

disclose (directly or indirectly) any Confidential Information [. . .] at any time or in any manner, except as required in the course of employment with the Company." (*Id*. ¶ 10); (*see also* Application Agreement, Ex. 1 to Verified Compl., ECF No. 1-1).   Confidential Information, as defined by the Application Agreement, includes:

> information not generally known to the public, including but not limited to trade secrets, patient information, business plans, formulas, technical data, protocols, processes, computer software, customer names, pricing, test results, sales and marketing information and materials, financial information, client information and business methods, plans, policies and practices.  If I am unsure whether or not information is confidential, I agree to speak with my manager before disclosing the information.

(Application Agreement at 1).  Defendant also entered into a Confidentiality Agreement, in which he also agreed not to disclose any Confidential Information. (Verified Compl. ¶ 12); (*see also* Confidentiality Agreement at 3, Ex. 2 to Verified Compl., ECF No. 1-2).

On March 23, 2022, Quest's Data Protection and Governance Department captured an email sent by Defendant from his work server email to his personal email address that included Confidential Information, including Quest's Standard Operating Procedures ("SOPs") and training guides. (Verified Compl. ¶ 19).  Defendant's supervisor, Remisola Ajayi, spoke with Defendant to determine why he sent confidential information to his personal account. (*Id*. ¶ 20). Defendant explained that he sent the information because "he liked to study." (*Id*.).  As a result of the alleged misappropriation, Quest opened an investigation and discovered that Defendant downloaded a cloud storage program on his work computer. (*Id*. ¶ 21).  On April 2, 2021 and August 19, 2021, Defendant allegedly sent another work email to his personal account on that attached a patient's test results. (*Id*. ¶ 22).  Plaintiff believes these test results belonged to Defendant's wife. (*Id*.).

//

//

On June 8, 2021, Defendant allegedly sent a few emails from his work server email to his personal email concerning another clinical laboratory, Express Medical Labs. (*Id*. ¶ 23). The emails were titled with information unrelated to the actual emails. (*Id*.). For example, one email sent on June 8, 2021, included the subject line "lighthouse" but included talking points for Express Medical Labs. (*Id*.). Specifically, the email states: "Express medical labs strives for excellence in all facilities" and discusses testing and "feedback from experts." (*Id*.).

From January 9, 2022, to March 23, 2022, Defendant allegedly continued to misappropriate Quest's SOPs by sending proprietary information to his personal account with misleading and mislabeled subject lines in an attempt to avoid scrutiny from Quest's Data Protection and Governance Department. (*Id*. ¶ 27). For example, Defendant allegedly sent an email with the subject line, "Insurance" but attached Quest's SOP on incident and injury reporting procedures. (*Id.*). Given Defendant's prior history with Express Medical Labs, Plaintiff believes Defendant has shared Confidential Information with Express Medical Labs, in violation of the Application Agreement and Confidentiality Agreement. (*Id*. ¶ 32). As a result of Defendant's multiple violations, Plaintiff terminated Defendant's employment on March 29, 2022. (*Id*. ¶ 34).

### B. POST-EMPLOYMENT WITH QUEST

On April 4, 2022, Quest's counsel sent Defendant a letter requesting the following:

> (i) provide an accounting for and identify all Quest Confidential Information in his possession; (ii) provide an accounting for and identify all Quest Confidential Information he transmitted to third parties; (iii) return all Quest Confidential Information in his possession; and (iv) allow a third-party IT vendor access to his personal email accounts, devices, and any cloud–based system to identify and delete all Quest Confidential Information.

(*Id*. ¶ 35). The next day, Defendant confirmed that he received the letter, and further revealed that he had been working with Express Medical Labs since April 2021. (*Id*. ¶ 36). He ultimately agreed to respond to all inquiries by April 6, 2022. (*Id*.). On April 7, 2022,

1  Defendant sent an email to Quest stating that he deleted the emails he sent to his personal email
2  and that he did not transmit any Confidential Information to any third-party. (*Id.* ¶ 39).
3        On April 14, 2022, Plaintiff filed the instant suit, alleging the following causes of action:
4  (1) injunctive and equitable relief; (2) breach of contract; (3) breach of the implied covenant of
5  good faith and fair dealing; (4) breach of the duty of loyalty; (5) misappropriation of trade
6  secrets under the Defend Trade Secrets, Act, 18 U.S.C. §§ 1836, *et seq.*; and (6)
7  misappropriation of trade secrets under the Nevada Uniform Trade Secrets Act, NRS §§ 600A,
8  *et seq.* (*Id.* ¶¶ 44–88). Plaintiff simultaneously filed an Emergency Ex Parte Motion for
9  Temporary Restraining Order. (Mot. Temporary Restraining Order, ECF No. 2), which this
10 Court denied. Plaintiff then filed the instant Amended Motion for Preliminary Injunction, (ECF
11 No. 12).

12 **II.    LEGAL STANDARD**

13       The same legal standard applies to both temporary restraining orders and preliminary
14 injunctions sought pursuant to Federal Rule of Civil Procedure 65. *See Stuhlbarg Int'l Sales*
15 *Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that the analysis
16 applied to temporary restraining orders and preliminary injunctions is "substantially identical").
17 A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear
18 showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*,
19 555 U.S. 7, 24 (2008). A court may grant such relief only upon a petitioner's showing of (1)
20 likelihood of success on the merits, (2) likelihood of irreparable harm in the absence of
21 preliminary relief, (3) the balance of equities weighs in petitioner's favor, and (4) an injunction
22 is in the public interest. *Id.* at 20. A temporary restraining order is distinguished by its
23 "underlying purpose of preserving the status quo and preventing irreparable harm just so long
24 as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of*
25 //

*Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974); *see also* Fed. R. Civ. P. 65(b) (limiting temporary restraining orders to 14 days unless extended for good cause, and providing for expedited hearings on preliminary injunctions).

### III. DISCUSSION

The Court, having considered the Complaint, Plaintiff's Motion, supporting affidavits, and accompanying exhibits, finds that Plaintiff has met the *Winter* factors and thus, the issuance of a limited temporary restraining order is appropriate.

### A. LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiff seeks injunctive relief on all four of its claims alleged in its Complaint—breach of contract, breach of implied covenant of good faith and fair dealing, breach of duty of loyalty, and misappropriation of trade secrets under 18 U.S.C. §§ 1836 et. seq. and N.R.S. §§ 600A, *et seq*. (Am. Mot. Preliminary Inj. at 14–21, ECF No. 12). In response, Defendant argues that Plaintiff relies on speculation, inadmissible hearsay, inferences, and conclusory allegations of Defendant's alleged wrongdoing. (Resp. to Am. Mot. Preliminary Inj. 9:15–10:11, ECF No. 19).

A court may consider otherwise inadmissible evidence in reviewing a motion for preliminary injunction. "The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citing 11 C. Wright and A. Miller, Federal Practice and Procedure, Civil, § 2949 at 471 (1973)). Defendant does not provide any citations or supporting caselaw—other than the citations that this Court has previously cited to—in support of his argument. (*See* Resp. to   Am. Mot. Preliminary Inj. 9:21–25) (arguing without citation that Quest fails to demonstrate a likelihood of success because "its motion

hinges on speculation, inadmissible hearsay, and inferences that cannot reasonably be made by this Court.").

Defendant further argues that the Verified Complaint and the three declarations contain conclusory allegations that Defendant engaged in wrongdoing. (Resp. to Am. Mot. Preliminary Inj. 9:26–10:9). Plaintiff, however, remedied the deficiencies in its initial Motion for Temporary Restraining Order by attaching additional evidence to its Amended Motion for Preliminary Injunction. Most critically, Plaintiff provides copies of the emails and attachments Defendant sent to himself containing allegedly confidential information. (*See* Am. Mot. Preliminary Inj. 7:24–8:21) (cataloguing the emails Elajara sent from his work server email to his personal email with attachments of standard operating procedures and policies). These emails further evidence Defendant's likely deceptive behavior. For example, Defendant sent himself an email on January 28, 2022, at 12:35PM titled "Insurance." (*See* Email dated January 28, 2022, at 12:35 PM, Ex. O to Am. Mot. Preliminary Inj., ECF No. 12-18). Further inspection, however, reveals that Defendant sent Quest's policies for centrifuge maintenance and a centrifuge calibration report form, which all do not relate to insurance. (*See id.*). Defendant sent multiple emails like this from January 9, 2022 to March 23, 2022. (*See* ADD Ex. J through Q). Plaintiff thus supports the instant Amended Motion for Preliminary Injunction with more than conclusory allegations for this Court to review.

Defendant does not proffer any additional arguments in response to Plaintiff's arguments regarding likelihood of success on the merits. Indeed, Defendant solely relies on the Court's citations in its prior Order Denying Quest's Motion for Temporary Restraining Order. (*See* Resp. to Am. Mot. Preliminary Inj. 9:26–10:9); (*see also* Order Denying Mot. Temporary Restraining Order 6:17–7:6, ECF No. 9). Given that the Court may consider inadmissible evidence and Defendant does not otherwise provide supporting authority to rebut Plaintiff's

assertions of likelihood of success on the merits, the Court finds that Plaintiff demonstrates likelihood of success on the merits regarding Plaintiff's four claims.

### B.  IRREPARABLE HARM

Plaintiff argues that if a temporary restraining order is not issued, Defendant will destroy the existing evidence by deleting emails and the proprietary information—the Standard Operating Procedures ("SOP"), training guides, client information, and patient test results—in Defendant's possession. (Am. Mot. Preliminary Inj. 12:22–14:17).  Defendant, in response, argues that: (1) there is no presumption of irreparable harm for misappropriation of trade secrets; (2) Plaintiff has not offered any evidence that Defendant disclosed confidential information; and (3) there is an adequate remedy at law. (Resp. to Am. Mot. Preliminary Inj.10:11–12:15).

To carry its burden, Plaintiff must establish that it will likely suffer irreparable harm without the issuance of injunctive relief. *Winter*, 555 U.S. at 21.  Plaintiff must "demonstrate a likelihood of irreparable injury—not just a possibility—in order to obtain preliminary relief." *Id*. "Public disclosure of a trade secret destroys the information's status as a trade secret." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919 (D. Nev. 2006) (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002, 104 S. Ct. 2862, 81 L. Ed. 2d 815 (1984).  Moreover, "[d]isclosure of non-trade secret confidential information is . . . recognized as a serious harm" that is "sufficient to meet the irreparable injury requirement for a preliminary injunction." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919 (D. Nev. 2006) (referencing *Union Pacific R.R. Co. v. Mower*, 219 F.3d 1069, 1071 n.1 (9th Cir. 2000)).

Another court in this District found that the plaintiffs were "likely to suffer irreparable injury to their business advantages if Defendant [used or disclosed . . .] Confidential Assets." *Zitan Techs., Ltd. Liab. Co. v. Liang Yu*, No. 3:18-cv-00395-RCJ-WGC, 2019 U.S. Dist. LEXIS 3067, at *12 (D. Nev. Jan. 3, 2019).  There, the Court found that the defendant, while

employed by the company, downloaded 113 files from the company's cloud-based account, transferred them to his personal computer, and proceeded to delete at least 26 files from another of cloud-based account. *Id.* at 8.  The defendant's continuing possession of the confidential information, coupled with the defendant's prior history of destroying evidence, demonstrated past and potential future irreparable injury to the Defendant. *Id*.

The Court finds *Zitan*'s reasoning persuasive and applicable to the present case.  Like the defendant in *Zitan*, Defendant emailed standard operating procedures, test results, and forms from his work email to his personal account. (*See* Decl. of Elajara ("Elajara Decl.") ¶ 12) ("In performing my duties for Quest and to refresh my knowledge, I, at times, emailed myself from my work email to my personal email various policies, procedures, and miscellaneous documents to allow me to review said documents at home, outside of work hours.").  Defendant does not dispute that he is in possession of the confidential policies, procedures, and his wife's COVID test results. (*See id*.).

The three declarations additionally suggest that Defendant destroyed evidence against Plaintiff's direct orders not to.  On April 13, 2022, Defendant met with Adrian Leon Mare, a digital forensic examiner retained by Quest to forensically image Defendant's iPad, iPhone, and Gmail account, and Marcus Lee, Quest's attorney. (*See* Mare Decl. 1–2).  According to Mr. Mare, Defendant refused to submit to the forensic imaging process; however, indicated he would be willing to factory reset his iPhone so that if any trade secret documents existed on his device, they would be deleted. (*Id.* ¶ 8); (*see also* Elajara Decl. ¶ 34) ("As a result, I told Quest's counsel and the IT vendor that since the goal was to confirm that l deleted things off my devices, I will proceed with factory reset the phone . . .").  Mr. Mare declares that Mr. Lee immediately instructed Defendant not to factory reset his device, as it may contain potential evidence. (Mare Decl. ¶ 8).  Mr. Lee stepped out to call Quest, and during his absence and in Mr. Mare's presence, Defendant allegedly reset his phone. (*Id.* ¶ 9).  According to Mr. Cusano,

Defendant has also downloaded both a cloud storage program and an additional program named "Data Destroyer" on his work computer. (Cusano Decl. ¶ 22). Defendant does not dispute this allegation in his Response. Defendant, therefore, likely destroyed potential evidence, after being instructed to preserve the evidence and with further reminder from Mr. Mare.

Given the above, allowing Defendant to continue possessing the alleged confidential information exposes Plaintiff to potential irreparable damage that cannot be remedied by monetary damages. *See Prot. Techs., Inc. v. Ribler*, No. 3:17-cv-00144-LRH-WGC, 2017 U.S. Dist. LEXIS 33200, 2017 WL 923912, at *2 (D. Nev. Mar. 8, 2017); *see also United Capital Fin. Advisers, Inc. v. Capital Insight Partners*, LLC, No. 2:12-CV-0300-LRH-PAL, 2012 U.S. Dist. LEXIS 44594, 2012 WL 1079329, at *3 (D. Nev. Mar. 30, 2012). The Court thus finds that irreparable harm is likely to occur if Defendant continues to possess the confidential information.[1]

### C.   BALANCE OF THE EQUITIES AND PUBLIC INTEREST

Next, Plaintiff argues that the balance of equities and public interest weigh in its favor. (Am. Mot. Preliminary Inj. 21:5–22:24). Although the Court previously denied Plaintiff's Ex Parte Motion for Temporary Restraining Order, the Court nevertheless determined that the balance of equities and public interest weigh in favor of injunctive relief. The Court explained:

---

[1] Defendant also argues that: (1) there is no presumption of irreparable harm for trade secrets; and (2) many of the documents Quest contends are "confidential" are not. (Resp. to Am. Mot. Preliminary Inj. 10:21–11:5, 11:9–26). The Court finds Defendant's additional arguments unpersuasive.

Although there is no presumption of irreparable harm for trade secrets, courts have recognized disclosure of non-trade secret and trade secret information as irreparable harm. *Union Pacific R.R. Co. v. Mower*, 219 F.3d at 1071 n.1. Moreover, the documents that Quest contends are confidential. Defendant argues that the policies and procedures referenced in Exhibits J through P are publicly accessible. (Resp. to Am. Mot. Preliminary Inj. 11:9–20). Further review of the website Defendant provides, however, reveals that the documents available over the Internet are not the same documents Defendant allegedly misappropriated because the publicly available documents are mere templates and not Quest specific documents. (COLA Accreditation Criteria, Ex. 2 to Resp. to Am. Mot. Preliminary Inj., ECF No. 19-2); (*see e.g.,* Email dated January 9, 2022 at 3:28 pm, Ex. J to Am. Mot. Preliminary Inj., ECF No. 12-13).

> Quest faces significant harm in the continual misappropriation of confidential information. Courts have also recognized a public interest in enforcing trade secrets and restrictive covenants. *Saini*, 434 F. Supp. 2d at 925 ("[T]here is a public interest in enforcing confidentiality agreements."); *Prot. Techs., Inc. v. Ribler,* No. 3:17-cv-00144-LRH-WGC, 2017 U.S. Dist. LEXIS 33200, at *6 (D. Nev. Mar. 8, 2017) (finding that "there is a strong public interest in protecting trade secrets, as evidenced by the existence of the DTSA and UTSA.").

(Order Denying Mot. Temporary Restraining Order 8:1–18). Defendant's arguments do not otherwise change the analysis. In weighing the balance of hardships, the Court finds that granting injunctive relief would hold Defendant to the terms of his agreement. Plaintiff, however, faces significant harm in the potential exposure of confidential information. Furthermore, there is a strong public interest in protecting trade secrets and confidential information. *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 925 (D. Nev. 2006).

Considering the above factors, the Court finds that the *Winter* factors weigh in favor of issuing a preliminary injunction. Plaintiff has demonstrated a likelihood of success on the merits, irreparable harm, a favorable balance of equities in its favor, and public interest.

### D.   BOND

The issuance of a temporary restraining order is conditioned on the movant posting security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "The district court is afforded wide discretion in setting the amount of the bond, and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003). Further, a strong likelihood of success on the merits may favor "a minimal bond or no bond at all." *California v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985).

A preliminary injunction must be accompanied by payment of a bond "in such a sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R.

Civ. P. 65(c). "The district court is afforded wide discretion in setting the amount of the bond, and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003). "So long as a district court does not set such a high bond that it serves to thwart citizen actions, it does not abuse its discretion." *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005) (citing *Friends of the Earth, Inc. v. Brinegar*, 518 F.2d 322, 323 (9th Cir. 1975)).

Here, Defendant requests a $50,000.00 bond in the event the Court decides to grant Quest's Motion. (Am. Mot. Preliminary Inj. 13:23–14:5). Defendant, however, provides no support or caselaw justifying this enormous amount. Accordingly, the Court finds that there is no evidence that Defendant will suffer harm from an injunction, and thus, the bond amount shall be zero. *See Conn. Gen. Life Ins.*, 321 F.3d at 882.

### IV. <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Plaintiff's Amended Motion for Preliminary Injunction, (ECF No. 12), is **GRANTED**. The following terms of Plaintiff's proposed preliminary injunction are enforced herein:

(a) Preliminarily enforcing the terms of Elarja's Application Agreement and Confidentiality Agreement;

(b) Compelling Elarja to, within fourteen (14) days of the date of entry of this order, provide an accounting under oath of all Quest Confidential Information Elarja took from Quest, where "Confidential Information" is defined as used in the Application Agreement and Confidentiality Agreement as "Confidential Information";

(c) Compelling Elarja to, within fourteen (14) days of the date of entry of this order, provide an accounting under oath of all Quest Confidential Information Elarja disclosed to third parties, the identities of those third parties, and identify any Confidential Information that was provided to each and every third party;

(d) Compelling Elarja to, within seven (7) days of the date of entry of this order, return to Quest's counsel all Quest Confidential Information, including all copies

thereof, as well as all originals and all copies of works, whether prepared by Elarja or others, in his possession, custody, or control, or in the possession of others, and to certify under oath that all such Quest Confidential Information has been returned;

(e) Compelling Elarja to, within seven (7) days of the date of entry of this order, allow a third-party IT vendor access his personal email accounts, his electronic devices, and his cloud-based electronic data storage systems to identify and delete all Quest Confidential Information;

(f) Compelling Elarja to immediately preserve any Quest Confidential Information in his possession, custody, or control;

(g) Compelling Elarja to immediately refrain from disclosing or utilizing any Quest Confidential Information for any purpose.

**DATED** this  13  day of June, 2022.

_____
Gloria M. Navarro, District Judge
United States District Court