**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| QUEST DIAGNOSTICS INCORPORATED, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:22-cv-00647-GMN-EJY |
| vs. ) | |
| ) | **ORDER** |
| ABDELRAHMAN ELARJA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Pending before the Court is the Motion to Dismiss, (ECF No. 16), filed by Defendant Abdelrahman Elarja ("Defendant"). Plaintiff Quest Diagnostics Incorporated ("Plaintiff") filed a Response, (ECF No. 20), to which Defendant filed a Reply, (ECF No. 22). For the reasons discussed below, Defendant's Motion to Dismiss is **GRANTED in part and DENIED in part**.

## I.        BACKGROUND

This action arises from Defendant's alleged misappropriation of trade secrets and breach of contract while employed at Quest Diagnostics, Inc. (*See* Verified Compl., ECF No. 1). The Court previously granted Plaintiff's Motion for Preliminary Injunction, which preliminarily enforced the terms of the Application Agreement and Confidentiality Agreement and compelled Defendant to provide, return, and preserve certain information and documents, allow a third-party IT vendor access to his accounts and devices, and refrain from disclosing any of Plaintiff's confidential information. (Order 11:14–12:9, ECF No. 23). The Court incorporates the background information from this previous Order, (ECF No. 23).

## II.        LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on

which it rests, and although a court must take all factual allegations as true, legal conclusions

couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule

12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements

of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This

standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

      "Generally, a district court may not consider any material beyond the pleadings in ruling

on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542,

1555 n.19 (9th Cir. 1990).  "However, material which is properly submitted as part of the

complaint may be considered." *Id.*  Similarly, "documents whose contents are alleged in a

complaint and whose authenticity no party questions, but which are not physically attached to

the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v.

Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds by *Galbraith v. Cty. of

Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)).  On a motion to dismiss, a court may also take

judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279,

1282 (9th Cir. 1986).  Otherwise, if a court considers materials outside of the pleadings, the

motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

      If the court grants a motion to dismiss for failure to state a claim, leave to amend should

be granted unless it is clear that the deficiencies of the complaint cannot be cured by

amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant

to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in

the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the

1    movant, repeated failure to cure deficiencies by amendments previously allowed, undue

2    prejudice to the opposing party by virtue of allowance of the amendment, futility of the

3    amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

4    **III.**          **DISCUSSION**

5          Defendant moves to dismiss all claims in Plaintiff's Verified Complaint.  The Court

6    discusses each claim in turn.

7          **A.      Injunctive and Equitable Relief**

8          Defendant argues that the Court should dismiss Plaintiff's claim for injunctive and

9    equitable relief because "injunctive relief is an equitable remedy, not an independent cause of

10   action." (Mot. Dismiss 4:1–5, ECF No. 16) (citing *Alandia v. US Bank*, No. 2:09-cv-687-JCM-

11   PAL, 2009 WL 4611442, at *3 (D. Nev. Dec. 1, 2009)).  Indeed, "declaratory relief and

12   permanent injunction are remedies that may be afforded to a party after [he or she] has

13   sufficiently established and proven [his or her] claims." *Freeto v. Litton Loan Serv. LP*, No.

14   3:09–cv–00754–LRH, 2011 WL 112183, at *3 (D. Nev. Jan. 12, 2011).

15         Plaintiff asserts that Defendant misconstrues *Alandia*. (Resp. 24:6–26, ECF No. 20).

16   Plaintiff argues that *Alandia* dismissed the plaintiff's claim for injunctive relief "because each

17   and every one of the plaintiff's other claims had failed." (*Id.* 24:6–7) (citing *Alandia*, 2009 WL

18   4611442, at *3).  That is, if at least one of Plaintiff's other claims survive, Plaintiff contends

19   that its claim for injunctive relief should survive as well. (*Id.* 24:19–26).  But recent decisions

20   from this Court have dismissed claims for equitable relief even though other claims survived.

21   *See, e.g.*, *SFR Invs. Pool 1, LLC v. NewRez LLC*, No. 2:22-cv-195-JCM-BNW, 2022 WL

22   17061225, at *5 (D. Nev. Nov. 17, 2022) (dismissing equitable lien counterclaim while

23   denying motion to dismiss as to other counterclaim); *SFR Invs. Pool 1, LLC v. Newrez LLC*,

24   No. 2:22-cv-00626-GMN-EJY, 2023 WL 112416, at *2 (D. Nev. Jan. 4, 2023) (same).  The

25   Court therefore GRANTS Defendant's motion to dismiss Plaintiff's claim for injunctive and

1  equitable relief but reserves the ability to impose injunctive and equitable relief as appropriate.

2  *See NewRez LLC*, 2022 WL 17061225, at \*5.

3      **B.    Breach of Contract**

4         Plaintiff alleges that Defendant entered into and breached two agreements: the

5  Application Agreement and the Confidentiality Agreement. (Verified Compl. ¶¶ 48–54).

6  Defendant argues that Plaintiff's breach of contract claim must be dismissed because Defendant

7  never signed any contract. (Mot. Dismiss 4:6–16).

8         A breach of contract claim under Nevada law requires "(1) the existence of a valid

9  contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Med.*

10  *Providers Fin. Corp. II v. New Life Centers, L.L.C.*, 818 F.Supp.2d 1271, 1274 (D. Nev. 2011).

11  Generally, a contract is valid and enforceable if there has been "an offer and acceptance,

12  meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005).

13         "[A]n agreement 'that, by the terms, is not to be performed within 1 year from the

14  making thereof' must be in writing and signed or it is void." *AC Media Grp., LLC v. Sprocket*

15  *Media, Inc.*, No. 2:16-cv-02145-APG-GWF, 2017 WL 1458198, at \*3 (D. Nev. Apr. 24, 2017)

16  (quoting NRS § 111.220(1)).  In Nevada, "[i]f a law requires a signature, an electronic

17  signature satisfies the law." NRS § 719.240(4); *see, e.g.*, *Gonzales v. Sitel Operating Corp.*,

18  No. 2:19-cv-00876-GMN-VCF, 2020 WL 96900, at \*2–3 (D. Nev. Jan. 7, 2020).  "Nevada law

19  requires only 'an electronic sound, symbol or process attached to or logically associated with a

20  record' that is 'executed or adopted by a person with the intent to sign the record.'" *Aliya*

21  *Medcare Fin., LLC v. Nickell*, No. CV-1407806-MMM-SHX, 2015 WL 11089594, at \*11

22  (C.D. Cal. May 28, 2015) (quoting NRS § 719.100) (finding that typed name was electronic

23  symbol constituting electronic signature under Nevada law).

24         Upon review of the Application Agreement and Confidentiality Agreement, which were

25  properly submitted as part of the Verified Complaint, the Court finds that Plaintiff has

1  sufficiently plead its breach of contract claim.  Defendant's only challenge to the breach of

2  contract claim is that the agreements apparently lack his signature. (Mot. Dismiss 4:7–16).  But

3  the Application Agreement contains Defendant's typed name at the bottom of each page, and

4  the last page demonstrates that he clicked "agree" to the terms of the agreement. (Applicant

5  Agreement, Ex. A to Verified Compl., ECF No. 1-1).  Similarly, the Confidentiality Agreement

6  contains a time-stamped electronic signature. (Confidentiality Agreement at 3, Ex. B to

7  Verified Compl., ECF No. 1-2).[1]  Defendant's contention that he did not sign the agreements is

8  not sufficient to overcome Plaintiff's well-pleaded complaint.[2]  Accordingly, the Court

9  DENIES Defendant's Motion as to the breach of contract claim.

10          **C.      Breach of the Implied Covenant of Good Faith and Fair Dealing**

11          Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and

12  fair dealing in its performance and its enforcement." *A.C. Shaw Constr. v. Washoe Cty.*, 784

13  P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205).  To establish a claim

14  for breach of the implied covenant of good faith and fair dealing, a plaintiff must prove: (1) the

15  existence of a contract between the parties; (2) that the defendant breached its duty of good

16  faith and fair dealing by acting in a manner unfaithful to the purpose of the contract; and (3) the

17  plaintiff's justified expectations under the contract were denied. *See Perry v. Jordan*, 900 P.2d

18  335, 338 (Nev. 1995) (citing *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919,

19  922–23 (Nev. 1991)).

20

21  ───────────────

22  [1] Plaintiff submitted a declaration from Plaintiff's Manager of Talent Acquisition Operations with its Response.
(Harvey Decl., Ex. 1 to Resp., ECF No. 20-1).  The declaration explains Plaintiff's standard procedures for
signing electronic documents. (*Id.* ¶¶ 2–9).  Defendant argues that Plaintiff improperly submitted the declaration

23  at the motion to dismiss stage because the declaration "goes outside of the four corners of the Verified Complaint
and the annexed agreements." (Reply 3:14–16).  The Court finds the declaration unnecessary to decide the issue

24  at this stage because Plaintiff's breach of contract claim is plausible on its face without the added support from
the declaration.

25  [2] Although Defendant does not challenge any other element of Plaintiff's breach of contract claim, Plaintiff
nonetheless articulated how it sufficiently alleged its breach of contract claim in its Response. (Resp. 19:5–
20:10).

1    Defendant asserts only one argument for dismissal of this claim: "Under the law, when a

2  party fails to state a claim for breach of contract, a claim for breach of the implied covenant of

3  good faith and fair dealing must also fail." (Mot. Dismiss 4:18–20) (citing *Marcus v. Nationstar*

4  *Mortg. LLC*, No. 19-56288, 2022 WL 1486831, at *1 (9th Cir. May 11, 2022)).  But Plaintiff

5  adequately alleged a claim for breach of contract. (*See supra* III.B).  Accordingly, the Court

6  DENIES Defendant's Motion as to Plaintiff's claim for breach of the implied covenant of good

7  faith and fair dealing.

8    **D.    Breach of the Duty of Loyalty**

9    "Under Nevada law, a claim for breach of fiduciary duty has three elements:

10  (1) existence of a fiduciary duty; (2) breach of the duty; and (3) the breach proximately caused

11  the damages." *Wilson v. Nevada Affordable Hous. Assistance Corp.*, No. 2:15-cv-01387-APG-

12  CWH, 2017 WL 1276055, at *3 (D. Nev. Mar. 30, 2017).  "[A]n employee owes a duty of

13  loyalty to act solely in the interests of [his or her] employer within the business area for which

14  [he or she] is employed." *Id.* (citing Restatement (Second) of Agency § 387 ("Unless otherwise

15  agreed, an agent is subject to a duty to [his or her] principal to act solely for the benefit of the

16  principal in all matters connected with [his or her] agency.")).  "Examples of breaches of the

17  duty of loyalty include acting contrary to the employer's interests, disclosing its confidential

18  information to outside sources to the employer's detriment, competing against the employer, or

19  usurping an opportunity that belongs to the employer." *Trang v. Bank of George*, No. 2:17-cv-

20  00162-APG-EJY, 2022 WL 594832, at *4 (D. Nev. Feb. 28, 2022) (citing Restatement

21  (Second) of Agency, §§ 388–89, 393, 395–96).  However, "an employee does not breach [his

22  or her] duty of loyalty by making preparations to compete." *White Cap Indus., Inc. v. Ruppert*,

23  67 P.3d 318, 319 (Nev. 2003).

24    Defendant argues that Plaintiff's claim for breach of the duty of loyalty fails because

25  "Defendant had every right to have a side job" and Defendant "could have started preparations

to compete." (Mot. Dismiss 5:5–9).  But the Complaint does not allege breach of the duty of loyalty because Defendant had a second job; the Complaint asserts that Defendant was "surreptitiously working for a competitor." (Verified Compl. ¶ 1).  Moreover, Defendant's argument that working for Plaintiff's competitor was merely "preparations to compete" is disingenuous when Defendant maintains that he was working a side job to support his family. Defendant was not making "preparations" to do anything; Defendant admits he was actively working another job while employed by Plaintiff, (*see* Mot. Dismiss 5:6), and the Complaint alleges that this other job was actively competing with Plaintiff, (*see* Verified Compl. ¶ 1).

Defendant additionally argues that Plaintiff's duty of loyalty claim is not plausible because Plaintiff "does not provide any evidence that any confidential information that Defendant had lawful access to (and was authorized to email to himself) was shared with any third party." (Mot. Dismiss 5:12–16).  This argument belies the Court's role in deciding a motion to dismiss.  The Court is not presently concerned with whether Plaintiff has evidence of its claim; the relevant inquiry at this stage is whether Plaintiff's Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).  Here, the Complaint alleges that Defendant emailed Plaintiff's Confidential Information from Defendant's work server email to his personal email with misleading subject lines that were unrelated to the content of the emails. (Verified Compl. ¶¶ 19–34).  The Court finds that the Complaint states a claim for breach of the duty of loyalty that is plausible on its face.  Accordingly, the Court DENIES Defendant's Motion as to Plaintiff's breach of the duty of loyalty claim.

**E.  Misappropriation of Trade Secrets under Federal and State Law**

Plaintiff alleges claims for misappropriation of trade secrets under both federal and state law.  In order to state a claim for misappropriation under the Nevada Uniform Trade Secrets Act ("NUTSA"), a plaintiff must allege: (1) a valuable trade secret; (2) misappropriation of the

trade secret through use, disclosure, or nondisclosure of use of the trade secret; and (3) that the misappropriation was made in breach of an express or implied contract or by a party with a duty not to disclose. *Frantz v. Johnson*, 999 P.2d 351, 358 (Nev. 2000).  A claim for misappropriation under the Defend Trade Secrets Act ("DTSA") has substantially similar elements. *See* 18 U.S.C. § 1836; *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020) ("To succeed on a claim for misappropriation of trade secrets under the DTSA, a plaintiff must prove: (1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff.").

A trade secret is "information, including, without limitation, a formula, pattern, compilation, program, device, method, technique, product, system, process, design, prototype, procedure, computer programming instruction or code" that "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other persons who can obtain commercial or economic value from its disclosure or use" and is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." NRS 600A.030(5); *see also* 18 U.S.C. § 1839 (providing similar definition).  The Nevada Supreme Court has classified corporate information, specifically pricing schemes, as a trade secrets where the information was "kept confidential." *Finkel v. Cashman Pro., Inc.*, 270 P.3d 1259, 1264 (Nev. 2012).

The DTSA and NUTSA define "misappropriation" as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express or implied consent" in specified circumstances. 18 U.S.C. § 1839(5)(A)–(B); *see also* NRS 600A.030 (providing similar definition).  "Improper means" include "theft, bribery, misrepresentation,

///

1  breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic

2  or other means." 18 U.S.C. § 1839(6)(A).

3       Defendant does not contest that the information in question constitutes trade secrets for

4  purposes of NUTSA and DTSA. (*See generally* Mot. Dismiss 5:18–7:2).  Instead, Defendant

5  argues that he did not acquire any information through "improper means" because Plaintiff

6  provided him with access to the subject information during his employment. (Mot. Dismiss

7  6:3–6).  Defendant relies on *LVRC Holdings, LLC v. Brekka*, which granted summary judgment

8  for defendants when the plaintiff failed to show that defendants accessed documents without

9  authorization. No. 2:05-cv-01026-KJD-GWF, 2007 WL 2891565, at *3 (D. Nev. Sept. 28,

10  2007), *aff'd*, 581 F.3d 1127 (9th Cir. 2009).  Like Defendant here, one of the *Brekka* defendants

11  sent company documents to his private e-mail address. *See id.*  But in this case, Plaintiff alleges

12  that it authorized Defendant to access certain information pursuant to the Confidentiality

13  Agreement.  And Plaintiff further alleges that the manner in which Defendant accessed the

14  information violated this agreement. (Resp. 14:1–5); (*see also* Verified Compl. ¶ 69).  That is,

15  Defendant acquired the documents by "improper means" by allegedly breaching a duty to

16  maintain secrecy. *See* 18 U.S.C. § 1839(6)(A).  Moreover, Plaintiff alleges that Defendant sent

17  the emails using sham subject lines and gave "conflicting and dubious reasons as to why he

18  misappropriated" Plaintiff's Confidential Information, suggesting that Defendant was aware

19  that he acquired the information by improper means. (Resp. 14:7–15); (*see also* Verified

20  Compl. ¶¶19, 22–28).[3]  The Court finds that the Complaint sufficiently alleges that Defendant

21  acquired the information through improper means.

22       Additionally, Defendant reiterates that he did not transmit any confidential information

23  to third parties. (Mot. Dismiss 6:20).  The Complaint alleges that Defendant has accessed *and*

24

25

[3] The Complaint further alleges that Defendant downloaded a cloud storage program on his work computer. (Verified Compl. ¶ 21).

*transmitted* Plaintiff's confidential, proprietary, and trade secret information and materials without consent. (Verified Compl. ¶ 73, 84–87).  As Defendant notes, the Complaint does not allege any specificities regarding how, when, and to whom Plaintiff transmitted the information. (*See* Mot. Dismiss 6:16–23); (*see generally* Verified Compl. ¶¶ 66–88).  Nonetheless, in light of Plaintiff's allegations regarding sham email subject lines created by Defendant during his concurrent employment with Plaintiff and Plaintiff's competitor, the Court finds plausible Plaintiff's allegation that Defendant transmitted Plaintiff's confidential information.  Thus, the Complaint sufficiently alleges that Defendant misappropriated the information in breach of the Confidentiality Agreement.

Lastly, Defendant argues that Plaintiff has failed to allege how it has been harmed. (Mot. Dismiss 6:26–28).  The Complaint alleges that "[i]f obtained by a competitor or if publicly disclosed over the internet, [the documents at issue] could be used to unfairly compete against [Plaintiff] or damage [Plaintiff]'s competitive advantage in the industry." (Verified Compl. ¶ 31).  Because an alleged injury to a plaintiff's competitive advantage satisfies the damages requirement, *see, e.g.*, *MicroVention, Inc. v. Balt USA, LLC*, No. 8:20-cv-02400-JLS-KES, 2021 WL 4734611, at *4 (C.D. Cal. Sept. 9, 2021), the Court finds that the Complaint sufficiently alleges damages resulting from Defendant's alleged misappropriation.  Thus, Plaintiff adequately alleges its claims for misappropriation of trade secrets under NUTSA and DTSA, and the Court DENIES Defendant's Motion as to these claims.

## V.     CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 16), is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Plaintiff's claim for injunctive and equitable relief is **DISMISSED without prejudice.**

///

**IT IS FURTHER ORDERED** that if Plaintiff seeks to amend the claim dismissed without prejudice in this Order, Plaintiff shall have twenty-one days from the date of this Order to do so.

**DATED** this ___11___ day of January, 2023.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT